# Exhibit B

# Exhibit A

WALTER SIGNORELLI, ESQ.
2020 Maple Hill Street
PO Box 1255
Yorktown Heights, New York 10598

August 30, 2017

DeSimone & Associates, LLC
One World Trade Center, Suite 8500
New York, NY 10007

Re: Ramon Fabian and Victor Vasquez v. City of New York, et al., U.S. District Court, SDNY, 16-CV-5296

    1. Pursuant to plaintiff's request and in accordance with Federal Rules of Civil Procedure, Rule 26 (a) (2), I have prepared this report, which constitutes my initial evaluation and conclusions within a reasonable degree of professional certainty of the actions and procedures employed by members of the New York City Police Department (NYPD) in connection with the arrest of and use of force against the plaintiffs Ramon Fabian and Victor Vasquez on June 9, 2015, at between approximately 2:20 and 3:00 a.m., on Third Avenue near East 57th Street in New York County.

    2. My opinion is based on the documents provided and my experience, training, education, and professional background, which are described below. My fee for preparation is $300 per hour and $2400 per day or part thereof for deposition or trial testimony. I reserve the right to revise this opinion upon the receipt of additional information.

    3. I am a retired member of the NYPD, having served for more than (31) thirty-one years. During my tenure, I held the ranks of Police Officer, Sergeant, Lieutenant, Captain, Deputy Inspector, and Inspector, and served in numerous capacities, including patrol officer, patrol sergeant, anti-crime sergeant, lieutenant tour commander, Executive Captain of the 46th Precinct, Bronx; Commanding Officer, Manhattan North Public Morals Division; Commanding Officer of the 79th Precinct in Bedford-Stuyvesant, Brooklyn; Commanding Officer, Staff Services Section of the Personnel Bureau; Commanding Officer, 24th Precinct., Upper Manhattan; Executive Officer, Bronx Narcotics Division; Commanding Officer, License Division; Executive Officer, Narcotics Division; Executive Officer, Manhattan North Narcotics Initiative; and Executive Officer, Brooklyn South Detective Division.

    4. During my tenure, I conducted, supervised, and reviewed thousands of arrests and many incidents involving the use of force. All of the positions noted above entailed training and supervision responsibilities regarding investigations, arrests, and use of force.

1

5. Since my retirement from NYPD, I have taught police science and criminal law courses at John Jay College of Criminal Justice, New York, NY, and St. John's University, Queens, NY, including courses in police administration, criminal investigation, constitutional law, and criminal law. I have been retained as a consultant by both plaintiffs and defense in a number of police liability cases, and have testified as a police procedures expert in both State and Federal courts.

## MATERIALS REVIEWED

6. The following is a list of materials pertaining to the incident and individuals involved that I reviewed thus far:
   a. Notice of Claim;
   b. 50H hearing transcript of Ramon Fabian;
   c. 50H hearing transcript of Victor Vasquez;
   d. Photographs;
   e. Montefiore Hospital medical records;
   f. Plaintiff's Requests for Documents and Interrogatories;
   g. Defendants Responses and Objections to Plaintiff's Requests;
   h. Complaint/Information by Officer Pappalardo against Ramon Fabian for Disorderly Conduct;
   i. Complaint/Information by Officer Leddy against Victor Vasquez for Harassment.
   j. NYPD arrest reports, and communications chronologies;
   k. Officers' memo books;
   l. Photographs of injuries;
   m. Deposition and transcript of Officer Pappalardo, 7/21/17;
   n. Deposition and transcript f Officer Leddy, 7/31/17.

## SUMMARY OF FACTS

7. On June 9, 2015 between approximately 2:20 and 3:00 a.m., at Third Avenue and East 58th Street, in New York County, NYPD Police Officers Leddy and Pappalardo of the 17th Precinct, stopped a food-delivery truck driven by Victor Vasquez and occupied by Ramon Fabian. According the plaintiffs, Mr. Vasquez and Mr. Fabian, the officers ordered them to get out of the truck. Both men began to comply. They unfastened their seatbelts, but the officers pointed guns at them and dragged them out of the truck. Vasquez was pulled out and made to lay face down on the roadway while Fabian was pulled out and made to lay face down on the sidewalk. Both men were handcuffed behind their backs, and held in custody for approximately forty minutes.

2

8. Vasquez, in his 50H hearing testimony, stated that "As soon as I undid my seatbelt, he approached me with the handgun close to my head and he just dragged me onto the floor and dragged me aggressively." (18:2-5). According to Vasquez, the officer put him face down on the roadway, placed a knee in his back, and handcuffed him. He remained face down on the roadway for about eight minutes, then on the sidewalk for about ten more minutes, then he was placed sitting on the sidewalk for about thirty minutes. After this time, the officer released him and told him that "it was a mistake." (23:24).

9. Fabian, in his 50H hearing testimony, stated that when the police officers approached them, "They already clocked their guns back and they told us to get down, get down, get down, screaming at us and that is when they pushed us down to the floor and they opened the door themselves." (24:16-20). Fabian testified, "He actually kicked me, to make me trip." (35:14-15). Fabian testified when he was on the sidewalk, "They told us to stay put and for me to get on my knees." (31:9-10).

10. Both officers denied pointing their guns at the plaintiffs, dragging them out of the truck, or handcuffing them. Officer Leddy testified that between East 56 and 57th Streets on Third Avenue they detained the plaintiffs on the sidewalk for 20 to 25 minutes. (Leddy 155:17-21). He testified that the plaintiffs were not free to leave before they were issued summons. (84:12-13). Officer Pappalardo testified to the same. (69:6-7).

11. According to the officers, they stopped the plaintiffs in connection with an incident that occurred earlier that morning at about 2:00 a.m. in front of 145 East 43rd Street near where Vasquez and Fabian had made a food delivery. While making the delivery, Fabian's cell phone and blue tooth device were allegedly stolen from their truck.

12. The officers responded to East 43rd Street where they observed the plaintiffs interacting with an unidentified homeless woman. The officers separated the parties and spoke with them. The plaintiffs complained that somebody removed their cell phone from their truck. (24:7-8). Officer Pappalardo testified that Fabian "indicated to me that the homeless lady that was sitting across the street was the one that stole it." (34:10-13). The officer testified, "They [the plaintiffs] had raised their voice toward her as I was talking to them." (113:17-24).

13. According to Officer Leddy, the plaintiffs were in close proximity to the homeless woman, yelling at her, and grabbing at her property. (25:22). He testified, "I heard yelling. I couldn't make out the exact words." (32:11-12; 53:19).

14. The officers spoke with the homeless woman regarding the cell phone. Officer Pappalardo testified that she had two cell phones. One of the officers dialed the number of Fabian's cell phone and neither of the woman's cell phones rang. (Pappalardo, 36:8-9). The

3

officers left the location without making a report of the alleged petit larceny, or issuing summons for disorderly conduct or harassment, or taking any further police action. (Leddy, 42:22-25).

15. A short time later at about 2:11 a.m. the NYPD Communications Division transmitted a radio call regarding a robbery in progress on East 43rd Street and Third Avenue. According to Officer Pappalardi, they responded to that location for the second time. Fabian and Vasquez were no longer there, but the homeless woman said that they had yelled and cursed at her and tried to take her bag. (61:3-9).

16. Officer Leddy offered an account that differed from Officer Pappalardo's. Officer Leddy did not say that they returned to East 43rd Street or had any further conversation with the homeless woman, but they saw the white truck going north on Third Avenue. They stopped the truck between East 56th and 57th Streets.

17. According to the officers, they ordered Fabian and Vasquez to get out of the truck and detained them on the sidewalk until another sector car drove the homeless woman to their location to view and identify the plaintiffs. The sector car officer gave a "thumbs down" signal, apparently indicating that the homeless woman could not identify them or that she was uncooperative. The homeless woman was then driven away without either Officer Pappalardo or Leddy speaking with her or without being identified.

18. Officer Leddy issued a summons (complaint/information) to Vasquez for harassment of the homeless woman; Officer Pappalardo issued a summons to Fabian for disorderly conduct. The summonses were returnable to Criminal Court on August 28, 2015.

19. According to plaintiffs, they did not receive summonses but were simply released. They did not go to court, but documents indicate that the summonses were dismissed by the court on August 14, 2015 as "legally insufficient."

## OPINION

20. In my opinion, it was a violation of the standards of proper police procedure and practices for Officers Pappalardo and Leddy to have arrested and used force against the plaintiffs under the circumstances of this case. Police officers are trained that to make a lawful arrest they must have probable cause, and they are trained that probable cause consists of facts and circumstances that would lead a reasonable person to conclude that the person to be arrested committed, was committing, or was going to commit a crime. They can also make an arrest when they have probable cause to believe that an offense (non-crime) was committed in their presence. The officers have not alleged facts that would meet those standards.

4

21. On East 43rd Street, during the first call at about 2:00 a.m., the officers observed the plaintiffs and the homeless woman interacting with one another regarding the alleged stolen cell phone. The plaintiffs told them about the theft of the property. The officers did not arrest anyone at that time and left the scene, which indicates that whatever they observed, it did not amount to an offense or warrant an arrest of anyone for disorderly conduct or harassment.

22. According to Officer Pappalardo, the officers responded to the second call at East 43rd Street at 2:11 a.m., and they had a further conversation with the homeless woman. She indicated that the plaintiffs had harassed her after the officers had left the scene the first time. However, according to Officer Leddy, they did not return to East 43rd Street or have further conversation with the homeless woman.

23. The officers stopped the truck on Third Avenue between East 56 and 58th Streets, which was a proper police practice and procedure. However, the officers immediately arrested the plaintiffs, which in my opinion under the circumstances was a violation of proper police practices and procedures.

Use of Force

24. In my opinion assuming the facts as alleged by the plaintiffs that the officers pointed guns at them, forcefully dragged them out of the truck, handcuffed them, and made Fabian kneel on the sidewalk, the officers violated the standards of proper police practices and procedures.

25. Police are trained that they may use physical force to make an arrest only when the arrest was proper; therefore, because the underlying arrest was improper, the use of force to arrest the plaintiffs was a violation of the standards of proper police procedures and practices.

26. Assuming, hypothetically, that the arrest was proper, nevertheless, the amount and type of force the officers used, as alleged by the plaintiffs, violated the standards of proper police procedure and practice. Police officers are trained that they may use force only when necessary and reasonable, and they should use only the minimal amount of force necessary to accomplish the task. Officers are trained to use "continuum of force" procedures, meaning that, when possible, an officer should try to persuade a suspect to submit to handcuffing before resorting to force. In cases in which force is necessary, the minimal force should be used before resorting to more violent types of force such as the force alleged in this case. Both officers testified the plaintiffs were cooperative, did nothing to provoke or threaten the officers, and did not resist arrest. (Leddy, 83:2-5; 84:2-13).

27. Both officers denied that they used force, handcuffed the plaintiffs, forced the plaintiffs to the ground, or forced Fabian to kneel on the ground while handcuffed. (Leddy, 67:9-

5

14). (Pappalardo, 69:2-3; 81:8-12). Photographs depict injuries to the plaintiffs' legs and wrists consistent with being handcuffed and being forced to the ground. These photographs, assuming their accurateness, support the plaintiffs' contentions and challenge the officers' account of the incident.

Summonses

28. Officer Pappalardo issued a summons to Fabian for disorderly conduct, Penal Law Section 240.20(1), which states:
> A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance, or alarm, or recklessly creating a risk thereof:
> 1. He engages in fighting or violent, tumultuous or threatening behavior...

29. In my opinion, a disorderly conduct charge under these circumstances was a violation of proper police practices and procedures. Fabian's conduct was related to his attempt to investigate the theft of the cell phone and electronic blue-tooth device, which he reported to the police. Under the circumstances, he may have been justified in attempting to retrieve his stolen property under the authority of NYS Penal Law, 35.25; Justification: use of physical force to prevent or terminate larceny or criminal mischief. In addition, Officer Leddy testified that there were no other people in the area on East 43rd Street when the interactions between the parties occurred (45:12-14), so the public was not inconvenienced, annoyed or alarmed.

30. On the summons issued by Officer Pappalardo, he indicated that the time of the violation was 2:15 a.m., which was when he returned to East 43rd Street the second time and when the plaintiffs were not present. As a supporting fact on the affidavit section of the summons, the officer alleged that Fabian said, "Bitch, did you take my phone." However, he did not hear that at the 2:15 a.m. occurrence because that was allegedly said when he was not present. Hypothetically, Fabian may have said that at the 2:00 a.m. occurrence, but that is not what is alleged on the summons. Furthermore, in my opinion, that statement by itself was not sufficient to support a charge of disorderly conduct and to use it as a basis for the arrest and summons was a violation of proper police practices and procedures.

31. Whatever the homeless woman alleged had occurred after the officers had left the scene did not occur in the presence of Officer Pappalardo, and police officers are trained that Criminal Procedure Law, Section 140.10 (1), states:
> 1..... a police officer may arrest a person for
> (a) Any offense when he or she has reasonable cause to believe that such person has committed such offense in his or her presence ...

6

Consequently, the officers did not have the authority to make an arrest for a non-crime offense that was not committed in their presence.

32. When the other sector officer brought the homeless woman to East 56th Street, he signaled "thumbs down." This indicated that there was no additional information on which to base an arrest, or the homeless woman did not identify Vasquez or Fabian, or she did not want to pursue charges.

33. Nevertheless, even without a complainant, Officer Pappalardo issued a summons and charged Fabian with disorderly conduct. Subsequently, the criminal court dismissed the summons as legally insufficient, a further indication that the issuance of the summons was a violation of proper police practices and procedures.

34. Officer Leddy issued a summons to Vasquez for harassment 2nd degree, Penal Law Section 240.26 (1), which states:
> A person is guilty of harassment in the second degree when, with intent to harass, annoy or alarm another person:
>> 1. He or she strikes, shoves, kicks or otherwise subjects such other person to physical contact, or attempts or threatens to do the same. . . .

.35. In my opinion, the harassment charge under these circumstances was a violation of proper police practices and procedures. Vasquez' conduct was related to his attempt to investigate the theft of the cell phone and electronic blue-tooth device, which he reported to the police. Under the circumstances, he may have been justified in attempting to retrieve his stolen property under the authority of NYS Penal Law, 35.25; Justification: use of physical force to prevent or terminate larceny or criminal mischief.

36. Officer Leddy did not arrest Vasquez on East 43rd Street but left the scene without further action, indicating that there were insufficient grounds to arrest Vasquez at that time. He did not have a further conversation with the homeless woman, and, in fact, when the other sector officer brought the homeless woman to East 56th Street, the sector officer signaled "thumbs down." This indicated that there was no additional information on which to base an arrest, or the homeless woman did not identify Vasquez or Fabian, or she did not want to pursue charges. (72:19-22).

37. Nevertheless, even without a complainant or even speaking to the homeless woman, Officer Leddy issued a summons and charged Vasquez with harassment (87:11-14). The summons he issued was defective as he made himself the complainant, not the homeless woman, who remained unidentified. Subsequently, the criminal court dismissed the summons as legally

7

insufficient, a further indication that the issuance of the summons was a violation of proper police practices and procedures.

## CONCLUSION

38. In my opinion, for all of the above reasons, in my opinion it was a violation of proper police procedure and practice to arrest and charge the plaintiffs. Furthermore, the amount and type of force used by the officers, as alleged, was in violation of the standards of proper police procedures and practices.

*Walter Signorelli*
Walter Signorelli

# Exhibit B

# WALTER SIGNORELLI, ESQ.
2020 Maple Hill St. #1255
Yorktown Heights, N.Y. 10598
(914) 245 5904
E-mail: Walter2497@optonline.com

| | |
|---|---|
| **PERSONAL** | Attorney, NYS Bar, 1984
Lecturer in Law and Police Science
Retired NYC Police Department Inspector
Consultant re: police procedures |
| **EDUCATION** | St. John's University School of Law
Juris Doctorate, Cum Laude, 1983
Awards: Criminal Law & Criminal Procedure

Columbia University School of Management
Police Management Institute, 1992

John Jay College of Criminal Justice, 1977 |

**PROFESSIONAL QUALIFICATIONS**

| | |
|---|---|
| **Management and Administration** districts. | Inspector, Deputy Inspector, Captain, NYC Police Department. Commanding Officer of precincts, divisions, |
| **Investigations** | Supervised investigative units in the Detective and Organized Control Bureaus and in the Narcotics Division. |
| **Professional** | Admitted to practice law, New York State Bar Association, 1984 |
| **Teaching** | Courses taught: Constitutional Law, Criminal Law, Evidence, Criminal Procedure Law, Criminal Investigations, Police Administration, Organized Crime, Law for Security Personnel |
| **PUBLICATIONS** | *Constable Has Blundered: Exclusionary Rule, Crime, and Corruption*: Carolina Academic Press, 2nd Ed. 2012

*Criminal Law, Procedure, and Evidence*: Taylor & Francis, 2011.

*Constable Has Blundered: Exclusionary Rule, Crime, and Corruption*: Carolina Academic Press, 1st Ed. 2010

*Crisis of Police Liability Lawsuits: Prevention and Management* |

Carolina Academic Press, 2006

Contributor: *Preparation Guide: State Trooper Exam*
Learning Express, N.Y., 2007

**EMPLOYMENT**
**EXPERIENCE**

| | |
|---|---|
| Jan. 1998 to Present | John Jay College of Criminal Justice<br>Lecturer and Adjunct Associate Professor |
| March 2001 to Present | Attorney<br>Westchester County Defense Panel |
| 2000 to Present | Independent Consultant re: police procedures |
| 2004 to 2006 | St. John's University<br>Adjunct Professor |

1967 to 1998    New York City Police Department

| Rank | Dates | Assignments: |
|---|---|---|
| Inspector | 1997-98 | Detective Borough Brooklyn South |
| Inspector | 1996-97 | Narcotics Division, Man. North Initiative |
| Inspector | 1994-96 | Narcotics Division, Executive Officer |
| Inspector | 1991-94 | License Division, Commanding Officer |
| Dep.Inspector | 1990-91 | Chief of Patrol's Office, Community Policing |
| Dep.Inspector | 1989-90 | Narcotics Division, Bronx |
| Dep.Inspector | 1987-89 | 24th Precinct, Commanding Officer |
| Captain | 1985-87 | Personnel Bureau, Employee Management, Staff Services |
| Captain | 1983-85 | 79th Precinct, Commanding Officer |
| Captain | 1980-83 | Organized Crime Control Bureau,<br>Manhattan No. Public Morals Division, Commanding Off. |
| Captain | 1979-80 | 46th Precinct, Executive Officer |
| Lieutenant | 1977-79 | 50th Precinct, Desk Officer |
| Sergeant | 1974-77 | 70th Precinct, CO, Anti-Crime |
| Sergeant | 1973-74 | 88th Precinct, Patrol Supervisor |
| Sergeant | 1972-73 | 17th Precinct, Patrol Supervisor |
| Police Officer | 1968-72 | 80th Precinct |
| Police Officer | 1967 | Police Academy |

**PROFESSIONAL**       New York State Defenders Association
**SOCIETIES**          Westchester County Bar Association
                       Columbia University, Police Management Institute
                       American Academy of Professional Law Enforcement
                       New York State Bar Association

# Exhibit C

**WALTER SIGNORELLI, ESQ.**
2020 Maple Hill St. #1255
Yorktown Heights, N.Y. 10598
(914) 245 5904
E-mail: Walter2497@optonline.com

**Fees Schedule**

$300 ---------------------------------------------Per hour for review and report.
$2400 --------------------------------------------Per day or part thereof for deposition or trial testimony.
$2400-------------------------------------------- Retainer

# Exhibit D

WALTER SIGNORELLI, ESQ.  August 2017
2020 Maple Hill Street, #1255
Yorktown Height, New York 10598
914 245 5904


Expert Witness Testimony Regarding Police Procedures

| Date | Case | Court/Details |
|---|---|---|
| 3/23/06 | Valdez v. NYC | NYS Supreme Court, Bronx<br>Judge Billings<br>NYC Law Department<br>Trial testimony |
| 4/17/06 | McCoy v. Suffolk County | U.S. District Court<br>Eastern District of NY<br>Judge Pratt<br>Laskin & Grossman<br>Trial testimony |
| 2/16/07 | Portela v. NYC | NYS Supreme Court, NYC<br>Judge Schlesinger,<br>#101805/03<br>Weiser & Associates<br>Trial testimony |
| 3/19/07 | Vera v. New York State | NYS Court of Claims<br>Judge Marin<br>Fred Lichtmacher<br>Trial Testimony |
| 2/28/08 | Jordan v. Suffolk County | Suffolk County Sup. Court<br>24626/04, J.Rebelino<br>A. Ferura<br>Trial testimony |
| 2/12/09 | Caceres v. Port Authority | U.S. District Court,<br>Southern District of NY<br>Judge Koeltl<br>Leventhal & Klein<br>Trial testimony |
| 3/19/10 | Daniels v. Chicago | U.S. District Court,<br>District of Northern Illinois<br>Loevy & Loevy<br>Deposition testimony |

| Date | Case | Court |
|---|---|---|
| 3/30/11 | Perriello v. NYS | NYS Court of Claims<br>Judge Mignano<br>Bleakley, Platt (D)<br>Trial testimony |
| 8/9/11 | Quagliarello v. City of Chester | U.S. District Court,<br>Eastern Dist. of Pennsylvania<br>Judge Baylson<br>Trial testimony |
| 1/11/12 | Overmars v. Yonkers | U.S. District Court<br>Southern District of NY<br>Judge Davison<br>Friedman, Levy & Goldfarb<br>Trial testimony |
| 2/10/12 | Bennett v. Southampton | U.S. District Court<br>Eastern District of NY<br>Deposition<br>Kaplan |
| 7/26/12 | Arciola v. City of Beacon | U.S. District Court<br>Southern District of NY<br>Deposition<br>R. Giampa, Esq. |
| 12/7/12 | Panas v. City of Philadelphia | U.S. District Court<br>Eastern Dist. of Pennsylvania<br>Trial (D)<br>Judge Davis<br>Philadelphia City Solicitor |
| 12/11/12 | Mitchell v. Adorno | NYS Supreme, Bronx County<br>Trial<br>Judge Riuz<br>Lenihan & Flamm |
| 12/13/12 | DeMichele v. WCPD | U.S. District Court<br>Southern District of NY<br>Judge Gardephe<br>Trial testimony<br>Krouner Law Office |

| Date | Case | Court |
|---|---|---|
| 3/14/13 | Davila v. NYC | NYS Supreme, Kings County<br>Trial<br>Judge Wade<br>Hershel Kulefsky Law Office |
| 3/19/13 | Wharton v. Nassau County | U.S. District Court<br>Eastern District of NY<br>Trial<br>Judge Kuntz<br>Messimo & Panetta |
| 5/23/13 | NYPD v. Hernandez, respondent | NYPD Trial Room<br>Cronin & Bycsek (D) |
| 7/30/13 | Vasquez v. NYC | U.S. District Court<br>Southern District of NY<br>Deposition<br>Emery Celli Brinckerhoff & Abady |
| 5/5/14 | Clarke v. NYCHA | NYS Supreme, NY County<br>Trial<br>Judge Reed<br>Pillersdorf Associates (Stern) |
| 10/6/14 | Delgado v. NYCHA | NYS Supreme, Bronx<br>Trial<br>Judge Soto<br>Krez & Flores (D) |
| 7/16/15 | Stern v. NYC | U.S. District Court<br>Eastern District of NY<br>Judge Garufis<br>Trial<br>Harris, O'Brien, St. Laurent |
| 12/16.15 | Wittmer v. Oneonta | U.S. District Court<br>Northern District of NY<br>Deposition<br>Jarrod Smith, PLLC |

| Date | Case | Court |
|---|---|---|
| 6/2/16 | Jacobs & Williams v. Delaware County, PA | U.S. District Court<br>Eastern District of PA<br>Trial<br>Judge Strawbridge<br>Oxman Goodstadt Kuritz |
| 6/22/16 | Bennett v. City of East Orange | U.S. District Court<br>New Jersey<br>Trial<br>Judge Hayden<br>Wale Mosaku, P.C. |
| 2/17/17 | Ortiz v. Boyer | NYS Supreme Court<br>Kings County<br>Trial<br>Judge Graham<br>Gialleonardo, McDonald, & Turchetti (D) |
| 3/27/17 | D'Allessandro v. Nassau County | U.S. District Court<br>EDNY<br>Judge Asrack<br>Trial |